**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JESSIE WILSON, ) | CASE NO. 1:13-cv-00365 |
| ) | |
| Petitioner, ) | JUDGE BENITA Y. PEARSON |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| TERRY TIBBALS, Warden ) | |
| ) | |
| Respondent. ) | **REPORT AND RECOMMENDATION** |
| ) | |

Petitioner, Jessie Wilson ("Wilson"), challenges the constitutionality of his conviction in the case of *State v. Wilson*, Cuyahoga County Court of Common Pleas Case No. CR-10-540498. Wilson, *pro se*, filed his Petition for a Writ of Habeas Corpus (ECF No. 1) pursuant to 28 U.S.C. § 2254 on February 19, 2013. On November 21, 2013, Warden Terry Tibbals ("Respondent") filed his Answer/Return of Writ. (ECF No. 6.) Wilson filed a Traverse on January 15, 2014. (ECF No. 8.) For reasons set forth in detail below, it is recommended that Wilson's petition be DENIED.

**I. Summary of Facts**

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002). The state appellate court summarized the facts underlying Wilson's conviction as follows:

> [*P5] The state's evidence showed that police officers were on patrol in a marked zone car as a result of several calls reporting drug activity in a neighborhood. They were on the lookout for a blue, Ford Thunderbird automobile that had been the subject of specific complaints. A dashboard-mounted video camera on the police car shows the officers slowing as they passed a parked, blue Thunderbird on a side street. The police car reversed and pulled behind the Thunderbird. There were three occupants in the car: a driver and passenger in the front seat and Wilson sitting in the back seat. Wilson exited the car and the officers did the same. Without warning, Wilson then bolted across the street. One of the officers followed. When the officer was within arm's reach of Wilson, Wilson produced a black handgun and fired a shot. The officer immediately moved out of the way and heard a second shot. He rolled to the ground and pulled his service weapon, momentarily losing sight of Wilson. When the officer recovered, he resumed pursuit on foot and radioed that shots had been fired and gave Wilson's description. As other officers converged in response to the pursuing officer's reports, they cornered and apprehended Wilson.
>
> ***
>
> The dashboard-mounted video showed that as Wilson fled, he was holding the waistband of his pants in a manner that could be viewed as his attempt to keep a firearm from falling from his pants. The audio on the recording distinctly features the sound of two gunshots. The sound of two gunshots was consistent with the pursuing officer's radio reports that Wilson had fired shots at him with a 9mm handgun.

*State v. Wilson*, 2011 Ohio App. LEXIS 4631, 2011-Ohio-5653 (Ohio Ct. App., Nov. 3, 2011).

## II. Procedural History

**A. Conviction**

On August 11, 2010, a Cuyahoga County Grand Jury charged Wilson with one count of attempted murder in violation of Ohio Revised Code ("O.R.C.") §§ 2903.02(A) & 2923.02(A), two counts of felonious assault in violation of O.R.C. § 2903.11(A)(1) & (A)(2), and one count of having a weapon while under disability in violation of O.R.C. § 2923.13(A)(2). (ECF No. 6-2, Exh. 2.) The first three counts carried firearm and repeat violent offender specifications. *Id*. A jury found Wilson guilty of attempted murder as charged in Count One, guilty of felonious

assault as charged in Count Two, and guilty of having a weapon while under disability as charged in Count Four. (ECF No. 6-4, Exh. 4.) Count Three was dismissed pursuant to Ohio Criminal Rule 29. *Id*.

On November 1, 2010, the trial court sentenced Wilson to an aggregate term of eighteen years imprisonment.[1] (ECF No. 6-4, Exh. 4.)

**B. Direct Appeal**

On December 1, 2010, Wilson, through new counsel, filed a Notice of Appeal with the Court of Appeals for the Eighth Appellate District ("state appellate court") raising the following assignments of error:

    I.    The trial court erred in denying appellant's Criminal Rule 29 motion for acquittal when there was insufficient evidence to prove felonious assault.

    II.    The appellant's convictions were against the manifest weight of the evidence.

    III.    Appellant was deprived of a fair trial where his statement was heard by the jury.

(ECF No. 6, Exhs. 8 & 9.)

On November 3, 2011, Wilson's conviction was affirmed. (ECF No. 6, Exh. 1.)

On December 15, 2011, Wilson, *pro se*, filed a Notice of Appeal with the Supreme Court of Ohio and raised the following propositions of law:

    I.    The trial court erred in denying Appellant's Criminal Rule 29 Motion for Acquittal where there was insufficient evidence of Felonious Assault and Attempted Murder.

---

[1] Counts One and Two were merged for the purpose of sentencing. (ECF No. 6-4, Exh. 4.) The eighteen year sentence was calculated as follows: ten years for Counts One and Two, seven years for the firearm specification, and one year for Count Four. *Id*. The sentences were to be served consecutively. *Id*.

      II.      The Appellant's convictions were against the Manifest Weight of the Evidence.

      III.      Appellant was deprived of a fair trial where his statement was heard by the jury.

(ECF No. 6, Exhs. 14 & 15.)

On February 22, 2012, the appeal was dismissed as not involving any substantial constitutional question. (ECF No. 6, Exh. 17.)

**C.  Federal Habeas Petition**

On February 19, 2013, Wilson filed a Petition for Writ of Habeas Corpus and asserted the following grounds for relief:

> **GROUND ONE**: Sufficiency of the evidence.
>
> **GROUND TWO**: Petitioner was denied a fair trial when his statement was heard by the jury.

(ECF No. 1.)

### III. Exhaustion and Procedural Default

**A.  Exhaustion Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b),( c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). However, if relief is no longer available in state court, exhaustion can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).

**B.    Procedural Default Standard**

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A claim may become procedurally defaulted in two ways. *Id*. First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[2] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still

---

[2] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*. In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id*. Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id*.

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434

F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id*. Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991). Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995)*; See Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D.Ohio 2007).

### IV. Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Parker v. Matthews,* 132 S. Ct. 2148, 2012 WL 2076341, *6 (U.S. Jun. 11, 2012); *Renico v Lett,* 559 U.S. –, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)) The Supreme Court has indicated, however, that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker*, 2012 WL 2076341, *6; *Howes v. Walker,* 132 S.Ct. 2741, 2012 WL 508160 (2012).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. However, a federal district court may not find a state court's decision unreasonable "simply because that court

-8-

concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, ––– U.S. ––––, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id*. at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 785. The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id*. (internal quotation marks omitted). Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786–87. This is a very high standard, which the Supreme Court readily acknowledged. *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

**A. Ground One: Sufficiency of the Evidence**

In ground one, Wilson asserts that his convictions were not supported by sufficient

evidence. (ECF No. 1.) Before the state appellate court, Wilson also argued that his conviction was against the manifest weight of the evidence. The Court will address only sufficiency, as manifest weight claims are not cognizable on federal habeas review.[3] *See, e.g.*, *Nash v. Eberlin*, 437 F.3d 519, 524 (6th Cir. 2006); *accord Hess v. Eberlin,* 2006 WL 2090093 at *6 (S.D. Ohio 2006).

The Due Process Clause of the Fourteenth Amendment requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged. *In re Winship*, 397 U.S. 358, 363-64 (1970). The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317 (1979). In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses. *See id.*; *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983). Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record . . . should be resolved in favor of the prosecution."

---

[3] As explained by the U.S. District for the Southern District of Ohio, "under Ohio law, a claim that a verdict was against the manifest weight of the evidence-as opposed to one based upon insufficient evidence-requires the appellate court to act as a 'thirteenth juror' and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Hess v. Eberlin,* 2006 WL 2090093 at *7 (S.D. Ohio 2006), *quoting State v. Martin*, 20 Ohio App.3d 172,175, 485 N.E.2d 717 (Ohio Ct. App. 1983). Because a federal district court does "not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review," this Court cannot consider whether Wilson's conviction was against the manifest weight of the evidence. *Id*.

*Heinish v. Tate*, 1993 WL 460782 at * 3 (6th Cir. 1993) *citing Walker*, 703 F.3d at 969-70;

*Wright v. West*, 505 U.S. 277, 296 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review.)

Consistent with these principles, the Supreme Court recently emphasized that habeas courts must review sufficiency of the evidence claims with "double deference:"

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, 'it is the responsibility of the jury – not the court– to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.' *Cavazos v. Smith*, 565 U.S. 1, ----, 132 S.Ct. 2, 4, 181 L.Ed.2d. 311 (2011) (per curiam). And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U.S. ----, ----- , 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 132 S.Ct. 2060, 2062 (2012). Under this standard, "we cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt," nor can "[w]e . . . inquire whether any rational trier of fact would conclude that petitioner . . . is guilty of the offenses with which he is charged." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). Rather, a habeas court must confine its review to determining whether the state court "was unreasonable in *its* conclusion that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial." *Id*. (emphasis in original) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)).

Wilson was convicted of attempted murder, which required the State to prove that he

-11-

purposefully attempted to cause the death of another. O.R.C. §§ 2903.02(A) & 2923.02(A). He was also convicted of felonious assault under O.R.C. § 2903.11(A)(2), which requires the State to prove that Wilson knowingly attempted to cause physical harm to another by means of a deadly weapon. Finally, he was convicted of having a weapon while under disability in violation of O.R.C. § 2923.13(A)(2), which requires the State to prove that Wilson knowingly acquired, had, used, or carried a firearm while he was under indictment for a felony offense of violence or had been previously convicted of a felony offense of violence.

This Court has concluded after its own independent review, that the following evidence, largely the same as referenced in the state appellate court's opinion and quoted in the "Summary of Facts" portion in Part I of this report and recommendation, is sufficient to uphold Wilson's convictions for attempted murder, felonious assault, and having a weapon while under disability.

Police officer Kopchak testified that on August 1, 2010, he and his partner spotted a blue Thunderbird automobile that was the subject of previous complaints. (Tr. 159-160.) Officer Kopchak stated that a man exited the vehicle, and he instructed the individual to come towards him, but that the individual ran away. (Tr. 161, 163.) Kopchak gave chase. *Id*. The event was recorded on a video camera mounted to the dashboard of the patrol car. *Id*. The video was shown to the jury. (Tr. 161-62.) He testified that as he closed in on the fleeing suspect, the suspect produced a handgun. (Tr. 164.) Kopchak testified that he saw the muzzle flash as the suspect fired one shot. (Tr. 164-65.) As Kopchak attempted to get out of the way, he heard another gunshot. (Tr. 165.) He got a good look at the suspect and was only two to three feet away. (Tr. 165-66.) Kopchak continued his pursuit (Tr. 164-179), and took the suspect into custody with the help of his partner and a police sergeant after the suspect put his hand up and

laid down on the ground. (Tr. 180-81.) Kopchak identified Wilson as the individual who fired shots at him on August 1, 2010. (Tr. 190-91.)

Patrolman Raoul Antanacio testified that he was working with Officer Kopchak on August 1, 2010. (Tr. 209.) He and Kopchak pulled up next to a blue Thunderbird automobile and turned on the police cruiser's overhead lights. (Tr. 210-11.) He observed a backseat passenger exit the vehicle and Kopchak told the passenger to come to him, but the passenger ran off. (Tr. 212-13, 216.) Antanacio testified that he heard a gunshot, broadcasted "shots fired" on the radio, and then heard a second gunshot. (Tr. 217, 236.) He did not see who fired the shots, however, he testified that Kopchak did not have his service weapon drawn when the first shot rang out. (Tr. 242, 247.) Antanacio indicated that Wilson was the individual he arrested on August 1, 2010.

Finally, the Court has also reviewed video footage from the dashboard camera ("dash-cam") of the police cruiser that was driven by the officers. (ECF No. 16.) The video was referenced in the state appellate court's decision, and was played for the jury. (Tr. 161-62, 165.) The dash-cam largely corroborates the testimony of the police officers, which shows the police driving up to a blue Ford Thunderbird from which an individual exited and ran off across the street. *Id*. The dash-cam shows an officer running in pursuit. Soon after the individual and the officer disappear from the camera's view, what sounds like a gunshot can be heard.[4] *Id*.

Viewing this testimony in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of all the crimes of which Wilson was convicted beyond

---

[4] Unlike the state appellate court, this Court cannot distinctly hear a second gunshot. (ECF No. 16.) The audio quality of the dash-cam is somewhat poor and there is a significant amount of other noise, such as the second officer's radio reporting, as well as the shouts of bystanders. In any event, whether one shot or two was fired is largely irrelevant to the question of whether sufficient evidence supports Wilson's conviction.

-13-

a reasonable doubt. There is ample evidence that Wilson fired a weapon at Officer Kopchak at close range. From this evidence, it can be inferred that Wilson purposefully attempted to cause the death of Officer Kopchak. Whether one or two shots were fired is immaterial. The same evidence is sufficient to demonstrate that Wilson knowingly attempted to cause physical harm to Officer Kopchak by means of a deadly weapon. Finally, the same evidence is more than sufficient to demonstrate that Wilson carried or used a firearm.[5]

Wilson asserts there was insufficient evidence to support his conviction, because there was no evidence to corroborate the police officers' testimony that he fired two gunshots at Officer Kopchak because no gun or shell casings were found. (ECF No. 1.) Wilson's argument is only tenable if eyewitness testimony alone is insufficient to establish the elements of the above offenses. However, Wilson cites no Ohio law suggesting that corroborating physical evidence is necessary element to sustain a conviction on any of these counts. Furthermore, Wilson has not cited any clearly established Supreme Court precedent suggesting that eyewitness testimony alone is constitutionally insufficient.

As such, the state appellate court's conclusion that sufficient evidence supported Wilson's conviction was not unreasonable.

**B. Ground Two: Fair Trial**

In ground two, Wilson argues that he was denied a fair trial when the jury heard a potentially incriminating statement he allegedly made to a police detective at the time of his arrest. (ECF Nos. 1 at 21-22; 8 at 15-23.) The state appellate court addressed Wilson's

---

[5] Wilson's petition does not argue that he was not under a disability within the meaning of Ohio law. As such, evidence that he acquired, had, used, or carried a firearm is sufficient too support a conviction on the last count.

-14-

argument solely as one raising a Fifth Amendment claim, concluding that Wilson had waived his right to seek exclusion of the statement by failing to file a motion to suppress. 2011-Ohio-5653 at ¶¶11-13. This Court construes the fair trial question raised by Wilson somewhat differently. As the challenged statement was excluded, the Court's analysis must center upon the question whether Wilson was denied his right to a fair trial when the jury heard the statement, but the trial court instructed them to ignore it.

"A defendant is entitled to a fair trial but not a perfect one." *Lutwak v. United States*, 344 U.S. 604, 619 (1953). As explained by the Supreme Court, "[n]ot every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions; instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently." *Bruton v. United States*, 391 U.S. 123, 135 (U.S. 1968) A court "normally presume[s] that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions, *Richardson v. Marsh*, 481 U.S. 200, 208 (1987), and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant, *Bruton v. United States*, 391 U.S. 123, 136 (1968)." *Greer v. Miller*, 483 U.S. 756, 767 (U.S. 1987); accord *Fears v. Bagley*, 462 Fed. App'x. 565 (6th Cir. 2012); *United States v. Frazier*, 314 Fed. App'x. 801, 806 (6th Cir. 2008) ("[O]nce the court gave limiting instructions to the jury, we must presume that they were followed.")

The following exchange occurred between the prosecution and police detective Michael Benz on direct examination:

    The State:    What happened?

-15-

| | |
|---|---|
| Witness: | We responded, lights and sirens; myself, Detective Torres, and Detective Underwood.  Before we got there, the suspect had been apprehended. |

***

| | |
|---|---|
| | At that time, I saw the suspect in the back seat of the police car and we knew that we were going to be looking for a gun that we didn't find – that they did not recover a gun.  So – |

***

| | |
|---|---|
| The State: | When you say we, who are you – |
| Witness: | There was, myself, Torres, Underwood.  There was probably, I'd say, at least ten officers, you know, on-duty officers that were looking for this gun. |
| | So initial – the first thing I thought to do was ask the suspect who was in the back of the car.  I went up to the window of the car.  I asked him: Hey, what's going on; see if he was willing to talk. |
| Def. Counsel: | Objection, your Honor. |
| The Court: | I'll overrule.  Go ahead. |
| Witness: | He was laying on – laying back in the seat, you know, covered in sweat.  He didn't have a shirt on.  The window was halfway open.  I looked in the window, I asked him: hey what's going on.  First thing he said: All I know, I'm going to jail for a long time. |
| Def. Counsel: | Objection, your Honor. |
| The Court: | Side bar. |
| | (Thereupon, a discussion was had between the Court and counsel off the record at the bench after which the following proceedings were had in open court:) |
| The Court: | I'm going to sustain the objection. |
| | Ladies and gentleman, I mentioned this to you earlier; if you wrote it down, I'm going to ask you to strike it.  That's going to be not part of the evidence, the comment that was just made.  You're to ignore that response.  It should not be used in any way during your |

> deliberations based on my finding as the judge.
>
> My job as judge is to handle the legal matters. So the statement that was just made I'm going to strike from the record. I'm going to ask you to strike it, anyone who made that a note at all.

(Tr. 258-60.)

Although Wilson acknowledges that his statement, as relayed by Det. Benz, was stricken, he argues that it unlikely the jury could follow the judge's instructions. (ECF No. 8 at 23.) Wilson cites *Bruton v. United States*, 391 U.S. 123, 134 (1968) for the proposition that "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." The *Bruton* decision, however is factually inapposite. During a joint trial of Bruton and a co-defendant, at which the co-defendant did not take the stand, a postal inspector testified that the co-defendant had confessed that he and Bruton had both committed the robbery. The jury was instructed that the confession constituted competent evidence that could be used against the co-defendant, but was inadmissible hearsay and should be disregarded as it pertained to Bruton.

The *Bruton* decision, however, is inapplicable to the case at bar. First, the *Bruton* decision was concerned with violations of the Confrontation Clause, as the statement of a co-defendant was admitted without the ability of the defendant to cross-examine the witness. Here, the Confrontation Clause is not implicated, as Wilson had the chance to cross-examine every witness and the controversial statement was not made by a co-defendant. Moreover, unlike in *Bruton*, the isolated statement made by Det. Benz was never admitted for any purpose but was immediately stricken. Nothing in Wilson's argument, or in the record, suggests that there was an

"overwhelming probability" that the jury would not or could not follow the court's clear and immediate instruction to disregard Det. Benz's isolated statement.  *Robinson v. Kansas*, 440 F. App'x 671, 672 (10th Cir. 2011) (finding that demonstrating prejudice was "nearly impossible" where a witness's improper statement was immediately stricken upon objection); *Mihelcich v. Birkett*, 2:11-cv-10137, 2011 WL 4360014 (E.D. Mich. Sept. 19, 2011) ("Because the jury was told to disregard Sergeant Weimer's testimony concerning [the victim's] hearsay statement, there was no Confrontation Clause violation."); *cf. Frazier v. Scutt*, 2011 U.S. Dist. LEXIS 130317 at *13 (E.D. Mich. Nov. 10, 2011) (a witness's "two brief, unprompted, references to petitioner being a murderer were not so prejudicial as to require a mistrial, in light of the fact that the judge ordered that the testimony be stricken from the record and the prosecutor never raised the issue again during the trial.")

Wilson has failed to demonstrate that his right to a fair trial was compromised where the challenged testimony was isolated and immediately stricken, especially where the trial court gave clear instructions that the testimony should be disregarded.  As such, Wilson's second ground for relief is without merit.

### V.  Evidentiary Hearing

On January 15, 2014, Wilson filed a Motion for an Evidentiary Hearing.  (ECF No. 10.) Generally, a habeas petitioner is entitled to an evidentiary hearing in federal court if the petition "alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing." *Stanford v. Parker*, 266 F.3d 442, 459-460 (6th Cir.2001) (*citing Wilson v. Kemna*, 12 F.3d 145, 146 (8th Cir.1994) (citation and internal quotation omitted)).  However, a petition may be summarily dismissed if the record clearly

indicates that the petitioner's claims are either barred from review or without merit. *Id.*

Wilson's motion is related to his second ground for relief. After defense counsel objected to Det. Benz's statement, a side bar was held off the record. The Court then sustained counsel's objection. As found above, Wilson's right to a fair trial was not compromised as the trial court instructed the jury to disregard the statement in question. Wilson seeks to have a hearing to essentially recreate the side bar conversation from the memories of counsel, the prosecutor, and the trial judge. (ECF No. 10 at 7.) As Wilson's ground for relief can easily be resolved by reference to the transcripts and record provided, an evidentiary hearing is not required. His motion is DENIED.

### VI. Conclusion

For the foregoing reasons, it is recommended that Wilson's Petition be DENIED.

/s/ Greg White
U.S. MAGISTRATE JUDGE

Date: March 14, 2014

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).